**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MARVIN KIRK**                                                        **PETITIONER**

**v.**                                                        **NO. 3:16-cv-95-DPJ-MTP**

**RON KING**                                                        **RESPONDENT**

<u>**REPORT AND RECOMMENDATION**</u>

BEFORE THE COURT is the *pro se* Petition of Marvin Kirk ("Kirk") for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. Having considered the submissions of the parties,

the record of the state court proceeding, and the applicable law, the undersigned recommends

that the Petition [1] be DENIED.

**FACTS AND PROCEDURAL HISTORY**

Petitioner Kirk was tried and convicted of aggravated domestic violence in the Circuit

Court of Madison County, Mississippi. During Kirk's trial, his wife, Casey Kirk ("Casey"),

testified that on Thursday, January 24, 2013, she was at home with her young son when Kirk

arrived at 7:00 p.m. Kirk took Casey's phone, keys, and wallet and accused her of using drugs

and cheating on him. Casey testified that, although she had previously used crystal

methamphetamine, she did not use any drugs on January 24, 2013, or the following weekend.

According to Casey, at some point during the evening of January 25, 2013, Kirk began

complaining that the house was dirty, so she started washing dishes. An argument ensued and

Kirk kicked Casey, causing her to fall onto the refrigerator. At that point, Kirk grabbed Casey by

the neck and began choking her. After Kirk released her, Casey finished washing the dishes, and

Kirk told Casey that her "mouth was going to get [her] put in a shallow grave outside if [she]

didn't shut up." (State Court Record [12-2] at 129-34).

The next morning, while Kirk was in the bathroom, Casey retrieved her phone and keys from Kirk's chair.  When Kirk returned, he took her phone and threw it out the back door.  Kirk then wrestled the keys away from Casey, causing a cut on her hand.  Kirk forced Casey to the ground and choked her until see could not see or breathe.  According to Casey, Kirk "choked [her] completely out," and she "lost consciousness."  After Casey regained consciousness, she lit a cigarette, and Kirk took it from her and burned her with it. ([12-2] at 135-37).

Thereafter, Casey left for the neighbors' house, but they were not home.  Casey returned home to find Kirk loading up his car.  Casey attempted to get their son's car seat out of the car, but Kirk pushed her away.  At that point, Casey picked up their son and ran through the woods to their landlord's house.  Casey told the landlord's wife, Colita Ogletree, that her husband had strangled her and asked if she could use her telephone to call 9ll.  At trial, a recording of the 911 call was played for the jury.  Deputy Sheriffs Tommy Strait and Brad Sullivan responded to the 911 call.  Deputy Sullivan detained Kirk, and after the Deputies spoke to Casey, they arrested him for domestic violence. ([12-2] at 139-48; [12-3] at 51, 69-70).

On April 3, 2013, Kirk was indicted under Miss. Code Ann. § 97-3-7(4) for aggravated domestic violence.  At trial, Kirk testified that, after he informed Casey that he flushed her crystal methamphetamine down the toilet, she began "digging through the house, just through everything . . . ."  According to Kirk, when Casey realized her methamphetamine was gone, she went on a "tirade."  He testified that Casey tried to stop him from leaving the house and cut her hand attempting to take his keys from him.  Kirk testified that he did not assault or choke Casey. ([12-3] at 98-108).

On August 28, 2013, Kirk was convicted of aggravated domestic violence. ([12-1] at 77-79).  On October 9, 2013, Kirk was sentenced as a habitual offender under Miss. Code Ann. §

99-19-81 to serve a term of twenty years in the custody of the Mississippi Department of

Corrections. ([12-1] at 93-94).

On October 16, 2013, Petitioner, through counsel, appealed his conviction to the

Mississippi Supreme Court, raising the following grounds for relief:

1. Whether plain error occurred, pursuant [to] Miss. R. Evid. 103(d), when the prosecution introduced "expert" testimony from a lay law enforcement witness, who did not witness the alleged account, but concluded that the Accuser's bruises were a result of strangulation caused by the Appellant, where strangulation was an element of the crime charged in the indictment.

2. Whether the trial judge erred in failing to direct a verdict because the evidence presented at trial was legally insufficient, or in the alternative, refusing to grant the Appellant's Motion for a New Trial, as the verdict of the jury was not supported by the overwhelming weight of the evidence.

3. Whether the trial judge abused his discretion, by incorrectly applying the Miss. R. Evid., thus depriving the Appellant of a fair trial by: (1) excluding letters and text messages proffered to impeach the Accuser's credibility under Miss. R. Evid. 802, when Miss. R. Evid. 801(d)(2)(a) was an applicable exception and (2) in prohibiting defense counsel to cross-examine his Accuser about a voluntarily [sic] drug hair follicle test on the grounds that it lacked relevancy, could not be used to attack creditability, and had no impeachment value when the Accuser testified on direct examination that she is a drug addict, in drug rehab, but denied using drugs the weekend that gave rise to the "Aggravated Domestic Violence" charge.

4. Whether the trial judge committed reversible error in: (1) separating the foreman from her fellow jury members for an extended period of time during the course of deliberations where the record is clear that she was instructed and allowed to stand in the hallway without the bailiff two separate times, (2) allowing a juror to make a phone call during deliberations, and (3) requesting that the jury deliberate until after 8:00 p.m., when the trial was already scheduled to last another day.

([12-5] at 112; [12-7] at 2-3). On February 5, 2015, the Mississippi Supreme Court affirmed

Petitioner's conviction in a written opinion. *See Kirk v. State*, 160 So. 3d 685 (Miss. 2015), *reh'g*

*denied* April 23, 2015.

On November 16, 2015, Petitioner sought leave from the Mississippi Supreme Court to file his motion for post-conviction collateral relief in the trial court in which he asserted the following grounds (as stated by the *pro se* Petitioner):

1. Kirk received the ineffective assistance of counsel, who failed to subject the State's case to any meaningful adversarial testing, resulting in a trial which was fundamentally unfair and a verdict unsupported by sufficient evidence, obtained as a result of a fundamentally unfair trial.

2. Kirk was wrongfully and unfairly sentenced to serve a term of twenty (20) years, as a habitual offender, day for day, without benefit of parole or any form of early release.

3. The sentence is unduly harsh and disproportionate, in violation of the Eighth (8th) Amendment to the United States Constitution.

4. Kirk was sentenced to mandatory time, under Miss. Code Annotated Section 99-19-81 (as amended), in violation of the Equal Protection clause of the Fourteenth (14th) Amendment to the United States Constitution.

([12-8] at 3, 7-8).

The Mississippi Supreme Court denied Petitioner's application stating: "The panel finds that the issues raised by Petitioner lack sufficient merit to warrant an evidentiary hearing. The Application to File PCCR Motion Pursuant to Miss. Code. Ann. § 99-39-27 is not well taken and should be denied." ([12-8] at 2).

On February 11, 2016, Petitioner filed the instant Petition for writ of habeas corpus asserting the following grounds for relief (as stated by the *pro se* Petitioner):

1. The Petitioner's right to Due Process under the Fourteenth (14th) Amendment and his right to a fair trial under the Sixth (6th) Amendment to the United States Constitution was violated the prosecution introduced "expert" testimony from a lay law enforcement officer witness, who did not actually witness the alleged crime, but concluded that the accuser's bruises were the result of strangulation caused by the Petitioner, where strangulation was an element of the crime charged in the indictment.

4

2. The State failed to prove its case to the jury beyond a reasonable doubt, in violation of the right to Due Process under the Fifth (5th) and Fourteenth (14th) Amendments to the United States Constitution.

3. Petitioner was denied his right to a fundamentally fair trial in violation of the Sixth Amendment to the United States Constitution when the trial court refused to allow into evidence certain letters and text messages from the alleged victim to the accused which would have been of impeachment value and discredited the accuser's allegation of aggravated domestic violence.

4. Petitioner was further denied his right to fundamentally fair trial, in violation of the Sixth (6th) Amendment and Fourteenth (14th) Amendment to the United States Constitution, by prejudicial conduct of the trial judge during jury deliberations; by separating jurors for an extended period; by requesting further deliberations until after 8:00 p.m. and; by improperly influencing a juror to reach a verdict.

5. Kirk was denied his fundamental right to the effective assistance of counsel, in violation of a fair trial under the Sixth (6th) Amendment to the United States Constitution.

6. Kirk was wrongfully and unfairly sentenced to serve a term of twenty (20) years, as a habitual offender, day for day, without benefit of parole or any form of early release, in violation of the right to fair trial, under the Sixth Amendment, and due process under the Fourteenth Amendment, to the United States Constitution.

7. The sentence imposed is unduly harsh and disproportionate, in violation of the Eighth (8th) Amendment to the United States Constitution.

8. Kirk was sentenced to mandatory time (twenty (20) years) under Miss. Code Ann. Section 99-19-81 (as amended) in violation of the Equal Protection Clause of the Fourteenth (14th) Amendment to the United States Constitution.

## ANALYSIS

The standard of review for habeas claims to be applied by this Court is set forth in 28 U.S.C. § 2254(d), which provides that a federal court may not grant habeas relief unless the state court's adjudication of the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d).  The "contrary to" and "unreasonable application" clauses of Section

2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

The "contrary to" clause applies when the state court fails to apply a legal rule announced

by the Supreme Court or reaches a result opposite to a previous decision of the Court on

materially indistinguishable facts. *Williams v. Taylor*, 526 U.S. 362, 405-06 (2000).  The

"unreasonable application" clause applies when the state court "correctly identifies the governing

legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id*. at 407-08.

The "unreasonable application" inquiry is based on an objective standard, and "unreasonable"

does not equate with "incorrect." *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004).

Habeas corpus serves as "a guard against extreme malfunctions in the state criminal

justice systems, not a substitute for ordinary error correction through appeal." *Harrington v.

Richter*, 562 U.S. 86, 102-03 (2011) (internal quotations omitted).  A federal court does not "sit

as a 'super' state supreme court" and may decide the issues presented by the habeas petition

"only to the extent that federal constitutional issues are implicated." *Smith v. McCotter*, 786 F.2d

697, 700 (5th Cir. 1986).

### Ground 1: Expert Testimony by a Lay Witness

In Ground 1, Petitioner argues that his rights to due process and a fair trial were violated

when a lay witness, Sheriff Deputy Tommy Strait, offered expert testimony by stating that

Casey's bruises were the result of strangulation.  Specifically, Deputy Strait testified that, when

he first saw Casey after responding to her 911 call, he noticed:

> She was scared and frantic and just really didn't know what to do because she was
> worried about Mr. Kirk coming back to where she was and getting her, as she said.

I also noticed around her neck she had strangulation marks. She had several bruises upon her also.

([12-3] at 52).

Respondent argues that this claim is barred from habeas review pursuant to the procedural-default doctrine. *See* Response [11]. Pursuant to this doctrine, federal courts are precluded from reviewing a prisoner's habeas claim where the state court declined to address the claim for failure to meet a state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In its written opinion affirming Petitioner's conviction, the Mississippi Supreme Court found that Deputy Strait's testimony "constituted the sort of testimony properly reserved to an expert," but held that this ground for relief was waived on appeal because Petitioner failed to make a contemporaneous objection to the testimony. *Kirk*, 160 So. 3d at 693-94. The supreme court also held that it was not "obvious error which was not properly raised by the defendant and which affects a defendant's fundamental, substantive right, nor was it an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 695 (internal quotations and citation omitted).

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729-30. To satisfy the "independent" and "adequate" requirements, the state court's dismissal must clearly and expressly reflect that it rests on a state procedural bar, and the bar must be strictly or regularly applied by the state courts to the vast majority of similar claims. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).

A state has failed to strictly and regularly apply a procedural rule only when the state "clearly and unequivocally excuse[s] the procedural default," and when the state fails to apply the rule to claims "identical or similar" to the petitioner's claim. *Amos v. Scott*, 61 F.3d 333, 339

(5th Cir. 1995).  Petitioner bears the burden of establishing that the State did not strictly or regularly follow a procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). Petitioner does not argue that Mississippi has not strictly or regularly applied the bar to similar claims, and the United States Court of Appeals for the Fifth Circuit has held that Mississippi's contemporaneous objection rule has been regularly and consistently applied. *See Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992).  Thus, Petitioner defaulted his claim in state court.

A federal court, however, may consider a defaulted claim under two narrow exceptions: cause and actual prejudice or miscarriage of justice. *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2005).  In order to demonstrate cause, "there must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753.  Prejudice may be demonstrated by showing that the cause "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Petitioner argues that his trial counsel was constitutionally ineffective in failing to object to Deputy Strait's testimony regarding strangulation.  "A defendant may show 'cause' by proving ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution." *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003).  The United States Supreme Court has held that "the question of cause for a procedural default does not turn on whether counsel erred or on the kind of error counsel may have made.  So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland* . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray v. Carrier*, 477 U.S. 479, 488 (1986).

8

In Ground 5, Petitioner attempts to raise the defaulted claim through a claim of ineffective assistance of counsel.  The Mississippi Supreme Court considered and rejected Petitioner's ineffective assistance of counsel claims. ([12-8] at 2).  As outlined in the undersigned's discussion of Ground 5, *infra* pp. 21-28, Petitioner failed to establish that the state court's decision was an unreasonable application of *Strickland*.  Accordingly, as Petitioner has not overcome the procedural bar as to Ground 1, relief on this ground should be denied.[1]

### Ground 2: Sufficiency of the Evidence

In Ground 2, Petitioner argues that the evidence was insufficient to support his conviction.  According to Petitioner, because Deputy Strait's "expert" testimony regarding strangulation "cannot be allowed," the "only evidence the State put on to prove this fundamental and essential element of the crime was the self-serving and uncorroborated testimony of the alleged victim, a self-admitted meth addict." ([2] at 6).

The crime of aggravated domestic violence is codified by Miss. Code. Ann. § 97-3-7(4)(a), which states, in pertinent part: "When the offense is committed against a current or former spouse . . . a person is guilty of aggravated domestic violence who: . . . (iii) Strangles, or attempts to strangle another." Miss. Code Ann § 97-3-7(4)(a)).  "'Strangle' means to restrict the flow of oxygen or blood by intentionally applying pressure on the neck, throat or chest of

---

[1] "The fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).  An allegation of actual innocence requires that a petitioner support this claim "with new, reliable evidence that was not presented at trial and show that it was 'more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Fairman v. Anderson*, 188 F.3d 635, 355 (5th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Petitioner has produced no such evidence to establish his innocence.

another person by any means or to intentionally block the nose or mouth of another person by any means." Miss. Code Ann. § 97-3-7(9)(a).

Insufficiency of the evidence can support a claim for habeas relief only if the evidence, when viewed in the light most favorable to the State, is such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997). The determination of the sufficiency of the evidence by a state appellate court is entitled to great deference. *See Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citing *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985) ("Where state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference.")).

The Mississippi Supreme Court addressed this issue and pointed to the following evidence:

> Casey Kirk testified that [Petitioner] 'grabbed me by my neck, and he started choking [] me . . . . I couldn't even cry or scream or anything because he had his hands on my neck and he was choking me. She testified that, the next day, [Petitioner] choked her again; she could not breathe and lost consciousness. Casey identified the pictures, State's Exhibits 11, 12, 13, as the result of 'him choking me.'

*Kirk*, 160 So. 3d at 696.

The supreme court also pointed to the fact that, even in the absence of expert testimony, Colita Ogletree, Deputy Strait, and Deputy Sullivan testified that they noticed marks on Casey's neck on January 26, 2013. *Id.* The supreme court concluded that the jury could reasonably infer

10

from the testimony and from the photographs that the red marks on Casey's neck were sustained as a result of strangulation by Petitioner.

This Court may not try the issues in Petitioner's state criminal case *de novo*, reweigh the evidence, or substitute its own judgment for that of the trier of fact, but must determine whether a rational jury could have found beyond a reasonable doubt that the Petitioner was guilty. *Stevenson*, 126 F.3d at 664. The evidence in this case, when viewed in the light most favorable to the State, is not such that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santellan*, 271 F.3d at 193. The undersigned finds that Petitioner has not established that the Mississippi Supreme Court's decision on this issue is contrary to, or involves an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim should be denied.

### Ground 3: Admissibility of Evidence

In Ground 3, Petitioner argues that the trial court erred by excluding certain letters and text messages allegedly sent to him from his wife, Casey Kirk. Petitioner also argues that the trial court erred by prohibiting defense counsel from cross examining Casey regarding a hair follicle drug test.

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). "Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). A federal habeas court's review of state court evidentiary rulings is limited to

determining whether a trial judge's error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). "Erroneous exclusion of evidence is fundamentally unfair if the evidence was material in the sense that it was crucial, critical, and highly significant. *Porretto v. Stalder*, 834 F.2d 461, 465 (5th Cir. 1987).

*Letters and Text Messages*

According to Petitioner, he wished to introduce at trial letters from Casey stating that "he was a wonderful husband and great father" and a text message from Casey stating "I'm sorry for what I did, I'll have to pay for that the rest of my life, I never meant to hurt you." ([2] at 10; [12-2] at 67-68). Prior to trial, the State filed motions *in limine* requesting that the trial court exclude any mention of the letters or text messages. The trial court ruled that the letters and messages were hearsay and, therefore, should be excluded. Petitioner argues that the trial court erred because the letters and messages constituted statements against interest and were admissible by virtue of an exception to the hearsay rule. Pursuant to the Mississippi Rules of Evidence, a statement against interest is defined as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.

Miss. R. Evid. 804(b)(3).

The Mississippi Supreme Court addressed this issue and held as follows:

> [N]either Casey's statements regarding [Petitioner's] conduct as a husband and father . . ., or her statements apologizing for some unknown misdeed 'tended to subject [her] to civil or criminal liability, or to render invalid a claim by [her] against another.' Miss. R. Evid. 804(b)(3). More importantly, Rule 804(b) requires the unavailability of the declarant as a witness and lists those statements 'not excluded by the hearsay rule *if the declarant is unavailable as a witness.*' Miss. R.

> Evid. 804(b) (emphasis added). Here, the declarant, Casey Kirk, testified as a witness at trial; thus, she cannot be said to have been unavailable as a witness under any of the applicable 'unavailability' definitions. *See* Miss. R. Evid. 804(a).

*Kirk*, 160 So. 3d at 698-99.

A federal court does not sit to determine whether the state court reasonably applied its rules of evidence. *Byrom v. Epps*, 817 F. Supp. 2d 868, 884 (N.D. Miss. 2011). Admissibility of evidence is a matter of state law, and even an erroneous evidentiary ruling is not grounds for relief unless the error is of such magnitude as to constitute a denial of fundamental fairness. Petitioner has not shown that the Mississippi Supreme Court erred in its adjudication of this issue. Moreover, even if the trial court erred in excluding this evidence, the error was not so extreme that it constituted a denial of fundamental fairness under the Due Process Clause. *Jackson*, 194 F.3d at 656. Petitioner has not demonstrated that this evidence was crucial, critical, and highly significant. *Porretto*, 834 F.2d at 465.

Petitioner also argues that he should have been allowed to offer the letters and messages as impeachment material. Again, Petitioner has not demonstrated that this evidence was crucial, critical, and highly significant. Neither Casey's statement regarding Petitioner's conduct as a husband and father nor her statement apologizing for some unidentified misdeed is necessarily inconsistent with Casey's testimony that Petitioner assaulted her on the days in question. The undersigned finds that Petitioner has not established that the Mississippi Supreme Court's decision on this issue is contrary to, or involves an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim should be denied.

*Hair Follicle Drug Test*

Petitioner also argues that the trial court erred in prohibiting defense counsel from cross examining Casey regarding a hair follicle drug test. During the trial, defense counsel attempted to cross examine Casey regarding a drug test taken in April, 2013. The State objected, and during a bench conference, the trial court ruled that the evidence was not relevant. Petitioner argues that the trial court erred because the drug test was relevant, credible, and admissible evidence. Pursuant to the Mississippi Rules of Evidence, relevant evidence is defined as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss. R. Evid. 401.

The Mississippi Supreme Court determined that the trial court did not abuse its discretion by ruling that the drug test was inadmissible as irrelevant. The supreme court held as follows:

> While [Petitioner's] trial counsel contended at the bench conference that '[t]he hair follicle test goes back for ninety days,' the test did not show any particular dates upon which Casey had used crystal methamphetamine. Cross examination of Casey regarding the drug test had no tendency to make the consequential fact, whether [Petitioner] has strangled Casey, any more or less probable, nor did cross examination regarding the drug test make any more or less probable [Petitioner's] theory that the case against him was a scheme devised by Casey in an effort to obtain medication. All the test showed was that, at some point during the ninety days prior to its administration in April 2013 (the precise date is not to be found in the record), Casey had used drugs. It does not suggest any likelihood that Casey had been using on the weekend of the alleged strangulation. Additionally, Casey testified that she had a problem with crystal methamphetamine and that she was, at the time of trial, residing at Jacob's Well Recovery Center.

*Kirk*, 160 So. 3d at 700.

Petitioner has not shown that the Mississippi Supreme Court erred in its adjudication of this issue. Moreover, even if the trial court erred in ruling that the drug test was irrelevant, the error was not so extreme that it constituted a denial of fundamental fairness under the Due

Process Clause. *Jackson*, 194 F.3d at 656.  Petitioner has not demonstrated that this evidence was crucial, critical, and highly significant. *Porretto*, 834 F.2d at 465.  Habeas relief on this claim should be denied.

### Ground 4: Jury Deliberations

In Ground 4, Petitioner argues that he was deprived of his constitutional right to a fair trial during jury deliberations.  Specifically, Petitioner argues that the trial court erred by separating the jury foreperson from the jury, allowing another juror to make a telephone call, ordering continued deliberations until after 8:00 p.m., and improperly influencing a juror to reach a verdict.

#### Separating the Jury Foreperson and Allowing a Telephone Call

The Fourteenth Amendment's Due Process Clause guarantees an accused the right to a trial by an impartial jury. *Duncan v. Louisiana*, 391 U.S. 145 (1968).  A jury is initially cloaked with a presumption of impartiality. *De La Rosa v. Texas*, 743 F.2d 299, 306 (5th Cir. 1984).  However, "the Supreme Court has clearly established a constitutional rule forbidding a jury from being exposed to an external influence." *Oliver v. Quarterman*, 541 F.3d 329, 336 (5th Cir. 2008).  If a jury is exposed to an outside influence, a rebuttable presumption of prejudice arises. *Drew v. Collins*, 964 F.2d 411, 415 (5th Cir. 1992).

The Constitution, however, does not require a new trial every time a juror has been placed in a potentially compromising but harmless situation. *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  In the context of a federal habeas review, even when there has been extrinsic influence on the jury, such error is subject to harmless error analysis. *Dorsey v. Quarterman*, 494 F.3d 527, 531 (5th Cir. 2007).  Due process requires the court to "determine the circumstances, the impact

thereof upon the juror, and whether or not it was prejudicial." *Remmer v. United States*, 347 U.S.

227, 230 (1954).

The Mississippi Supreme Court provided the following factual description of the events

which took place during the jury deliberation in Petitioner's trial:

> After more than two hours of deliberation, the bailiff informed the court that the jury foreperson needed to speak to the court. The foreperson informed the court that the jurors could not come to a unanimous verdict and that further deliberation was unlikely to help the jury to reach unanimity. The trial judge then instructed the foreperson to stand out in the hall "without going back into the jury room." With the foreperson in the hall, the judge discussed with the lawyers the giving of a *Sharplin* instruction.[2] Neither the State nor Kirk's counsel objected to the giving of the instruction.

> The court then asked the bailiff to summon the foreperson, whereupon he read the following and inquired whether it would aid the jury in reaching a verdict:

>> I know that it is possible for honest men and women to have honest differing opinions about the facts of a case, but if it is possible to reconcile your differences of opinion and decide this case, then you should do so.

>> Accordingly, I remind you that the Court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching an agreement if you can do so without violence to your individual judgment.

>> Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.

> The foreperson responded, "I can only say it might." After instructing the foreperson again to stand in the hall, the trial court recalled her and said, "I have decided that it's appropriate for me to give that instruction to the entire jury." He

---

[2] *See Sharplin v. State*, 330 So. 2d 591 (Miss. 1976) (Court approved a jury instruction to be "given in either criminal or civil [cases] when the trial judge is confronted by a hung jury.")

then instructed the bailiff to retrieve the remainder of the jury; when the jury had been assembled, the trial court read the *Sharplin* instruction. After the jury resumed deliberations, the bailiff informed the court that one juror wanted to telephone home "just to let somebody know where they are." With no objection from counsel, the trial judge permitted this "in the presence of the bailiff so he make[s] sure she doesn't give or receive any information."

*See Kirk*, 160 So. 2d at 700-01; ([12-4] at 28-40).

Petitioner argues that there were multiple occasions where outside influences could have tainted the verdict because the trial judge placed the jury foreperson in the hallway, by herself, on two separate occasions and allowed another juror to make a telephone call. Citing *Wilson v. State*, Petitioner argues that Mississippi law clearly dictates that a defendant is entitled to "have the jury kept together without exception from the time it is selected until finally discharged." 248 So. 2d. 802, 804 (Miss. 1971). The *Wilson* court also stated that "[t]he separation of even one juror in such cases is an irregularity which will vitiate the verdict." *Id.*

In *Kirk*, the Mississippi Supreme Court addressed *Wilson* and determined that its holding—which requires a new trial if a jury is not kept together—is limited to capital cases, where jury sequestration is required. 160 So. 2d at 701. The supreme court noted that the case before it was not a capital case. Thus, the court confronted the issue of whether Petitioner was prejudiced by the trial court's actions during jury deliberation. The court stated as follows:

[W]e observe that it was irregular for the court in these circumstances to separate the foreperson from the rest of her peers on the jury. Trial courts should not separate the jury during deliberations in this manner—capital case or otherwise. Further, the judge soliciting the advice of the foreperson with regard to the utility of the *Sharplin* instruction (though, in the end, he ended up giving the *Sharplin* instruction anyway) was inappropriate and unnecessary.

*Id*. at 702.

The supreme court, however, determined that there was no identifiable prejudicial effect on the jury. The supreme court also observed that, at the commencement of the

trial, the trial court instructed the jurors to avoid all contact with attorneys, parties, witnesses, and spectators and instructed them to not converse with anyone about the case or any subject connected with the trial. *Id.* The supreme court held that, given the presumption that the jury followed the trial court's instructions and the lack of evidence demonstrating that any juror failed to conduct themselves in accordance with the trial court's instructions, the trial court did not commit reversible error.

The factual findings made by the state court regarding the impartiality of a jury are entitled to a presumption of correctness and may be set aside only if they lack fair support in the record. *Rushen v. Spain*, 464 U.S. 114, 120 (1983). Petitioner has failed to demonstrate that the trial court's alleged errors rendered his trial fundamentally unfair or that the alleged errors had a substantial and injurious effect or influence on the jury's verdict. Petitioner has not demonstrated that any juror was subjected to inappropriate influences or that any juror was biased. Accordingly, the undersigned finds that Petitioner has not established that the Mississippi Supreme Court's decision on this issue is contrary to, or involves an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim should be denied.

*Influencing a Juror*

Petitioner argues that the trial court improperly influenced the jury foreperson to reach a verdict by separating her from the other jurors and questioning her regarding the utility of a *Sharplin* instruction. The Fifth Circuit has held that "[t]he trial judge must enjoy wide discretion in determining when to declare a mistrial on grounds of a deadlocked jury." *Lowenfield v.*

*Phelps*, 817 F.2d 285, 293 (5th Cir. 1987).  "To amount to a constitutional deprivation, the trial

judge's action must constitute coercion that denies the accused a fundamentally fair trial." *Id*.

The following exchange occurred after the trial court read the *Sharplin* instruction to the

foreperson:

> *Court*: Do you believe that that instruction might result in the jury being able to
> reach a verdict in this case?
>
> *Foreperson*: It might.  I cannot say for sure.
>
> *Court*: I understand.  And you certainly are no guarantor, but you are the foreman
> and you're the person that I talk to in circumstances like this, and your judgment is
> what I'm going to be relying on.  But what you're telling me is if I were to give that
> instruction to the jury, it might result in the jury reaching a verdict?
>
> *Foreperson*: I can only say might.
>
> *Court*: Well, if you need to think about this some, you can think about it.  You can
> go stand out there in the hall or sit down in the room back there and think about it.
> And let me say, there's no incorrect answer that you give.  Yes, no, or maybe are
> all fine.  I'm just trying to make sure that you have time to make those
> considerations.

([12-4] at 35-36).  While the foreperson was in the hall, the trial judge decided to read the

*Sharplin* instruction to the jury without further input from the foreperson.

As previously mentioned, the Mississippi Supreme Court found that the trial court's

questioning of the foreperson regarding the utility of a *Sharplin* instruction was "inappropriate

and unnecessary," but concluded there was no prejudicial effect on the jury and, therefore, no

reversible error. *Kirk*, 160 So. 3d at 702.  Petitioner has not shown that the supreme court erred

in its adjudication of this issue.  The trial court's actions of reading the *Sharplin* instruction—

which encourages jurors to decide the case for themselves but only after discussion and impartial

consideration of the case with the other jurors—to the foreperson, asking her whether the

instruction might aid the jury in reaching a verdict, and placing her in the hall while the trial

19

court and counsels discussed the instruction were not coercive in such a way as to deny Petitioner a fundamentally fair trial.

The record demonstrates that the foreperson perceived that the trial court was simply seeking her advice on whether a *Sharplin* instruction would aid the jury in reaching a verdict, and she told the trial court, "I can only say it might." The record does not suggest that the trial court coerced the foreperson into reaching a verdict. Accordingly, the undersigned finds that Petitioner has not established that the Mississippi Supreme Court's decision on this issue is contrary to, or involves an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. Habeas relief on this claim should be denied.

<u>Continuing Deliberations</u>

Petitioner argues that the trial court erred by ordering the jury to deliberate until after 8:00 p.m. "A judge may encourage jurors who are having difficulty reaching a verdict to deliberate longer, and to give due consideration and respect to the views of their peers." *United States v. Straach*, 987 F.2d 232, 242 (5th Cir. 1993) (citing *Allen v. United States*, 164 U.S. 492 1896)). "It is not only permissible but proper for a trial judge to ask a jury to continue deliberating if it appears that further deliberation might be fruitful in helping the jury reach a unanimous verdict." *Coleman v. Quarterman*, 456 F.3d 537, 548 (5th Cir. 2006). The "real question is whether the jury was required to deliberate an unreasonable length of time or for unreasonable intervals or was threatened with the prospect of such unreasonably lengthy deliberations." *United States v. Kimmel*, 777 F.2d 290, 295 (5th Cir. 1985).

The record reflects that the jury began its deliberations at approximately 5:15 p.m. Thereafter, the jury sent the trial court two questions regarding the evidence in the case. At

approximately 7:25 p.m., the trial court instructed the bailiff to ask the jurors if they wanted

dinner.  Thereafter, the jury foreperson informed the trial court that the jury was having

difficulties reaching a unanimous verdict.  The trial court eventually read a *Sharplin* instruction

to the jury, encouraging the jury to continue its deliberations.  The trial court then noted that it

was 7:45 p.m. and ordered food for the jury.  Sometime after 8:00 p.m.,[3] the jury returned its

verdict. ([12-4] at 26-40).

The record reveals that the jury was not required to deliberate an unreasonable length of

time or for unreasonable intervals.  It was not unreasonable for the trial court to direct the jury to

continue deliberations at 7:45 p.m., given that the jury began deliberations at 5:15 p.m.  The trial

court's action were not coercive or fundamentally unfair. *See Thompson v. Cain*, 161 F.3d 802,

810 (5th Cir. 1998); *United States v. Fields*, 483 F.3d 313, 340 (5th Cir. 2007) (instruction to

jury to "keep deliberating" was appropriate when the jury had been deliberating for only six

hours).  Accordingly, the undersigned finds that Petitioner has not established that the

Mississippi Supreme Court's decision on this issue is contrary to, or involves an unreasonable

application of, clearly established federal law, or that the decision was based on an unreasonable

determination of the facts in light of the evidence.  Habeas relief on this claim should be denied.

### Ground 5: Ineffective Assistance of Counsel

In Ground 5, Petitioner argues that his trial counsel provided him ineffective assistance.

According to Petitioner, his trial counsel failed to subject the State's case to meaningful

adversarial testing, and as a result, he is entitled to a presumption that trial counsel's failures

prejudiced the defense.  Petitioner also cites to two specific instances when trial counsel

---

[3] The record does not show the precise time at which the jury returned its verdict, but Petitioner
asserts that it was after 8:00 p.m.

allegedly provided ineffective assistance: (1) counsel failed to object when a lay witness, Sheriff

Deputy Tommy Strait, offered expert testimony by stating that Casey's bruises were the result of

strangulation and (2) counsel failed to prepare for the habitual offender portion of the trial,

allowing the State to improperly introduce evidence and allowing the trial court to instruct the

State regarding the introduction of the evidence.

<u>Cronic Standard</u>

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court

defined the standard by which an ineffective assistance of counsel claim in a habeas proceeding

is to be measured.  Pursuant to *Strickland*, Petitioner must show that his "counsel's performance

was deficient" and that "the deficient performance prejudiced the defense." 466 U.S. at 687; *see

also Motley v. Collins,* 18 F.3d 1223, 1226 (5th Cir. 1994) (stating that satisfaction of the

standard requires a showing that counsel's acts "fell below an objective standard of

reasonableness").

The Supreme Court also recognized that "[i]n certain Sixth Amendment contexts,

prejudice is presumed." *Strickland*, 466 U.S. at 692.  The presumption of prejudice arises in three

circumstances: (1) there was a "complete denial of counsel" or a denial of counsel "at a critical

stage" of trial; (2) counsel failed to "subject the prosecution's case to meaningful adversarial

testing;" or (3) counsel was "called upon to render assistance where competent counsel very

likely could not." *United States v. Cronic*, 466 U.S. 648, 658-59 (1984).  In *Cronic*, the Supreme

Court recognized that the performance of counsel may be so inadequate as to constitute no

assistance of counsel, despite the physical presence of an attorney. *Id*. at 654 n.11.

Petitioner has the substantial burden of demonstrating that trial counsel failed to subject the State's case to meaningful adversarial testing. *See Childress v. Johnson*, 103 F.3d 1221, 1228 (5th Cir. 1997). The Supreme Court explained as follows:

> When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecution's case, we indicated that the attorney's failure must be complete. We said 'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'

*Bell v. Cone*, 535 U.S. 685, 696-97 (2002).

Routine complaints about the performance of trial counsel at various stages of trial do not establish counsel's failure to test the State's case. "It is not enough for the defendant to show mere shoddy representation or to prove the existence of errors, omissions, or strategic blunders by counsel." *Johnson v. Cockrell*, 301 F.3d 234, 238 (5th Cir. 2002) (internal quotations and citation omitted). "Bad lawyering, regardless of how bad, does not support the per se presumption of prejudice." *Id*.

The record does not show a complete failure on the part of trial counsel. Instead, the record shows that trial counsel subjected the State's case to meaningful adversarial testing. Counsel filed motions *in limine* and motions to strike evidence. ([12-1] at 33-45). In fact, one of the motions resulted in the trial court informing the State that it would not likely allow expert opinion regarding strangulation from a registered nurse. ([12-2] at 17-51). Counsel engaged in meaningful cross-examinations of the victim and other State witnesses, presented evidence, raised objections, and moved for a directed verdict and judgment notwithstanding the verdict. (*See*, *e.g*., [12-1] at 90-91; [12-3] at 6-38, 73-74, 79-80; [12-3] at 46-50). Petitioner has failed to demonstrate that he is entitled to a presumption of prejudice pursuant to *Cronic*.

Thus, the appropriate standard of review is found in *Strickland*, the case relied upon by the state court in addressing Petitioner's claim. *See Underdonk v. Vannoy*, 2016 WL 79771320,

23

at *11 (E.D. La. Sept. 12, 2016); *Espinoza v. United States*, 2012 WL 3100465, at *3 (S.D. Tex. July 30, 2012).

*Strickland Standard*

As previously mentioned, *Strickland* requires Petitioner to show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense" in order to establish an ineffective assistance of counsel claim. 466 U.S. at 687. To prove a deficiency, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* This Court's "scrutiny of counsel's performance must be highly deferential" and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Moawad v. Anderson,* 143 F.3d 942, 946 (5th Cir. 1998) (observing that the court "gives great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment") (internal quotations and citations omitted).

"To meet the prejudice prong of the *Strickland* test, the defendant may not simply allege but must 'affirmatively prove' prejudice." *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir. 1986) (citing *Celestine v. Blackburn*, 750 F.2d 353, 356 (5th Cir. 1984)). Further, Petitioner must not only prove that the outcome of his trial would have been different "but for counsel's alleged errors," but must also prove that "'the result of the proceedings was fundamentally unfair or unreliable.'" *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)). An ineffective assistance of counsel claim must be stated with specificity. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Summarily reciting general complaints about counsel's performance without discussing their specific basis or how application of the law purportedly justifies relief does not state a claim for habeas review.

24

*Hughes v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.").

In considering Petitioner's application for post-conviction relief, the Mississippi Supreme Court reviewed the claims of ineffective assistance of counsel and determined that Petitioner failed to meet his burden of establishing ineffective assistance of counsel. ([12-8] at 2). Given that the ineffective assistance of counsel claims before the Court present mixed questions of law and fact[4] and that *Strickland* is the "clearly established Federal law" which governs such claims, the issue in this case is "whether the Mississippi Supreme Court's decision to reject [Petitioner's] ineffective assistance claims[s] 'involved an unreasonable application' (and not merely an incorrect application) of *Strickland*." *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002).

    i.   *Expert Testimony by a Lay Witness*

In Ground 1 of his Petition, Petitioner argues that his rights to due process and a fair trial were violated when a lay witness, Sheriff Deputy Tommy Strait, offered expert testimony by stating that Casey's bruises were the result of strangulation. The Mississippi Supreme Court held that this ground for relief was procedurally barred under Mississippi law. Petitioner now attempts to bring this ground for relief before this Court in the context of an ineffective assistance of counsel claim. As outlined above, ineffective counsel may provide cause to avoid a procedural bar, but the "cause and prejudice" test is only satisfied if counsel's performance is rendered ineffective under the *Strickland* standard.

Petitioner has failed to establish that his trial counsel was ineffective under the *Strickland* standard. Even if trial counsel committed error in failing to object to Deputy Strait's testimony

---

[4] *Nixon v. Epps*, 405 F.3d 318, 324 (5th Cir. 2005).

regarding strangulation, Petitioner cannot demonstrate prejudice.  Petitioner has failed to prove that the outcome of his trial would have been different "but for counsel's alleged errors" or that "the result of the proceeding was fundamentally unfair or unreliable." *Vuong*, 62 F.3d at 685.

Considering the evidence presented at trial, Deputy Strait's testimony regarding strangulation was not critical, but ancillary.  As previously discussed, Casey Kirk testified that Petitioner choked her until she lost consciousness.  The State introduced into evidence photographs of Casey's neck taken shortly after the altercation with Petitioner.  Additionally, Colita Ogletree (the landlord's wife), Deputy Strait, and Deputy Sullivan testified that they noticed marks on Casey's neck. *See supra* pp. 10.  A reasonable jury could infer from this evidence—even in the absence of expert testimony—that Petitioner strangled Casey.[5] Accordingly, Petitioner has failed to establish that the Mississippi Supreme Court's rejection of Petitioner's ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Therefore, Petitioner is not entitled to habeas relief on this ground.

### ii.    *Preparation for Sentencing Hearing*

Petitioner argues that trial "counsel failed to be prepared for the habitual offender trial and permitted the state to fail to properly introduce evidence of prior convictions and the trial court to then instruct the state on what evidence must be submitted and how to properly do so." ([2] at 30).  The record, however, does not support Petitioner's assertions.

In order to establish that Petitioner was a habitual offender pursuant to Miss. Code Ann. § 99-19-81, the State attempted to introduce a document purportedly showing Petitioner was

---

[5] The undersigned also notes that trial counsel used her cross-examination of Deputy Strait to attack his expertise in the area of strangulation and to suggest to the jury that the marks on Casey's neck could have been self-inflicted. ([12-3] at 60-65).

previously convicted of grand larceny. Defense counsel objected to the document, and the

following exchange occurred:

> *Defense Counsel*: If I could, your Honor, technically that is not an abstract of the record, that's a report form that goes from the clerk to the records department at [the Mississippi State Penitentiary]. As such, it contains rank hearsay. The method for proving habitual offender is to produce the judgment of conviction and judgment of sentence, and then if there's a pen pack[6] that shows the number of days of incarceration, if that's necessary.
>
> *State*: We have the pen pack, your Honor. We have this. He's been put on notice. We have had the hearing. He swore to it under oath during testimony at trial.
>
> *Court*: Do you have the pen pack?
>
> *State*: Yes, sir.
>
> *Court*: Why don't you just use that?

([21-4] at 47-49).

Thereafter, the court took a recess, and when the hearing resumed, the following

exchange occurred:

> *Court*: Look, I'm tired of sitting here and nothing happening. Let's move forward. If we're not going to move forward, I'm going to move on to something else.
>
> *State*: We're ready.
>
> *Court*: Well, it's the State's burden to prove the prior convictions.
>
> *State*: Your Honor, I have three certifications of record from the Mississippi Department of Corrections. I have also three certified copies of the abstract from the circuit clerk's office of Yazoo City to correspond to those.
>
> *Court*: [Counsel], you have to say, Judge, I would like to have admitted as State's exhibit one, some document that the defendants can either agree to or object to and for me to consider.

---

[6] "Pen packs" or "penitentiary packets" are the records maintained on inmates sentenced to the custody of the Mississippi Department of Corrections, and certified copies of pen packs suffice as competent evidence of prior convictions. *Jasper v. State*, 858 So. 2d 149, 152 (Miss. App. 2003); *Dixon v. State*, 812 So. 2d 225, 231 (Miss. App. 2001).

([12-4] at 50).

The State then presented three separate pen packs relating to three prior felony convictions. Defense counsel objected to the final pen pack, arguing that particular conviction was not listed in the indictment. The trial court noted that a third prior conviction was unnecessary to establish Petitioner was a habitual offender but admitted the pen pack as evidence. ([12-4] at 50-54).

The record belies Petitioner's assertions that his trial counsel was unprepared for and committed error during the habitual offender phase of his trial. Defense counsel was well prepared. Counsel objected to the introduction of improper hearsay evidence and objected to the introduction of evidence of a prior crime not listed in Petitioner's indictment. It is certainly not error for counsel to object to the introduction of improper evidence. Additionally, counsel was not deficient for failing to object to the trial court's statement to the prosecuting attorney, encouraging him to speed up his presentation of the State's evidence. Moreover, Petitioner has failed to demonstrate prejudice.[7] Accordingly, Petitioner has failed to establish that the Mississippi Supreme Court's rejection of Petitioner's ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Therefore, Petitioner is not entitled to habeas relief on this ground.

### *Ground 6: Error in Sentencing*

In Ground 6, Petitioner argues that the trial court erred during the habitual offender phase of his trial by instructing the State on what constitutes sufficient proof of prior convictions and

---

[7] Petitioner does not dispute that he was in fact convicted twice previously of separate felonies and was sentenced to separate terms of one year or more in prison as required by the applicable habitual offender statute, § 99-19-81.

instructing it on how to introduce such proof.  Petitioner asserts that the trial court's actions

demonstrate bias.  A biased judge may implicate a defendant's constitutional due process rights

and, therefore, entitle a defendant to habeas relief. *See Public Citizen, Inc. v. Bomer*, 274 F.3d

212, 217 (5th Cir. 2001) ("'Trial before an unbiased judge is essential to due process'") (quoting

*Johnson v. Mississippi*, 403 U.S. 212, 216 (1971)).  There exists, however, a presumption that

judicial officials discharge their duties without bias, and the burden is on Petitioner to

demonstrate the trial judge's bias. *See Bigby v. Dretke*, 402 F.3d 551, 558-59 (5th Cir. 2005).

"[B]ias by an adjudicator is not lightly established.'" *Richardson v. Quarterman*, 537 F.3d 466,

474 (5th Cir. 2008).

"Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and

presumptive bias." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008).  There are three

situations in which the Supreme Court has found presumptive bias: (1) the decision maker has a

direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator

has been the target of personal abuse or criticism from the party before him; and (3) a judicial or

quasi-judicial decision maker has the dual role of investigating and adjudicating disputes and

complaints. *Id*.  Petitioner does not argue that any of these circumstances exist or otherwise

assert a claim based on a presumptive bias.

A claim of actual bias may be established if Petitioner can demonstrate that the trial judge

was "acting clearly outside the bounds of law or reason in a manner that would signal any bias

toward the defendant." *Bigby*, 402 F.3d at 560.  Petitioner must show a "deep-seated favoritism

or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540,

555 (1994).  Petitioner has failed to establish actual bias on the part of the trial judge.

As outlined in the undersigned's discussion of Ground 5, *supra* pp. 26-28, defense counsel objected to certain documents being offered by the State to prove Petitioner's habitual offender status as being hearsay and explained that a pen pack should be submitted into evidence in order to prove habitual offender status.  Thereafter, the State informed the Court it had a pen pack, and the Court stated, "[w]hy don't you just use that?"  The Court then took a recess, and following the recess, the trial court expressed its frustration with "nothing happening." Thereafter, the State began listing the items it possessed relating to Petitioner's prior convictions, and the Court stated, "you have to say, Judge, I would like to have admitted as State's exhibit one, some document that the defendants can either agree to or object to and for me to consider"

A review of the record reveals that the trial court's statements were not intended as aid to the prosecution, but as an admonishment and plea for the prosecution to move forward with the presentation of its evidence.  Plaintiff has not shown any "deep-seated favoritism or antagonism that would make fair judgment impossible." *See Liteky*, 510 U.S. at 555.  Thus, Petitioner has failed to establish that the Mississippi Supreme Court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.  Therefore, Petitioner is not entitled to habeas relief on this ground.

### Ground 7: Disproportionate Sentence and the Eighth Amendment

In Ground 7, Petitioner argues that his sentence was unduly harsh and disproportionate to his crime in violation of the Eighth Amendment.  Petitioner asserts that no weapon was involved and the victim did not suffer any serious injuries.  As previously explained, Petitioner was convicted of aggravated domestic violence which is codified by Miss. Code. Ann. § 97-3-7(4)(a). This statute provides that "[u]pon conviction, the defendant shall be punished by imprisonment

in the custody of the Department of Corrections for not less than two (2) nor more than twenty (20) years." Miss. Code. Ann. § 97-3(4)(a).  Following his conviction, Petitioner was sentenced as a habitual offender under Miss. Code. Ann. § 99-19-81 to serve the maximum term—twenty years—in prison. ([12-1] at 93-94).

In *Lockyer v. Andrade*, the Supreme Court explained that it has not established a "clear or consistent path for courts to follow" in determining whether a sentence is so disproportionate that it violates the Eighth Amendment. 538 U.S. 63, 72 (2003).  Nevertheless, the Supreme Court has identified three criteria for courts to consider for proportionality: the "gravity of the offense and the harshness of the penalty;" (2) the "sentences imposed on other criminals in the same jurisdiction;" and (3) the "sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 291-92 (1983).

In *McGruder v. Puckett*, the Fifth Circuit explained that a court should first make a threshold comparison of the gravity of the offense against the severity of the sentence. 954 F.2d 313, 316 (5th Cir. 1992).  Only after a court finds that the sentence is "grossly disproportionate to the offense" should the court consider the remaining *Solem* factors. *Id.*  "A finding that a sentence is grossly disproportional should be made only in 'exceedingly rare and extreme cases'" *McCline v. Epps*, 2008 WL 4457842, at *6 (N.D. Miss. Sept. 30, 2008) (quoting *Lockyer*, 538 U.S. at 64).  Where a state sentence is within the statutory limits, the petitioner must rebut the presumption of constitutionality by showing that his situation is exceptional. *Stewart v. Stalder*, 2007 WL 1890706, at * 12 (E.D. La. June 28, 2007) (citing *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *Nicks v. Cain*, 2005 WL 1578024, at *8 (E.D. La. June 30, 2005)).

In this case, the Court must consider the fact that Petitioner was sentenced as a habitual offender.  Petitioner's sentence was "imposed to reflect the seriousness of his most recent

offense, not as it stands alone, but in the light of his prior offenses." *McGruder*, 954 F.2d at 316.

Petitioner was convicted of grand larceny in 1998 and burglary in 2007. *Kirk*, 160 So. 3d at 691.

Moreover, Petitioner's latest offense—aggravated domestic violence—was a crime of violence.

Even without the use of a weapon, strangulation is a violent act, which could result in serious

injury or death.  Petitioner's wife testified that he choked her until she could not cry or scream

and, the following day, choked her until she could not breathe and until she lost consciousness.

*Kirk*, 160 So. 3d at 696.

Petitioner's sentence was not grossly disproportionate to the gravity of the offenses upon

which his sentence was based and, therefore, is not cruel and unusual punishment under the

Eighth Amendment. *See Rummel v. Estelle*, 445 U.S. 263, 265-66 (1980) (finding that a life

sentence following convictions for fraudulent use of a credit card, passing a forged check, and

false pretenses was not unconstitutionally disproportionate).  Thus, Petitioner has failed to

establish that the Mississippi Supreme Court's rejection of this claim was contrary to, or

involved an unreasonable application of, clearly established federal law as determined by the

Supreme Court of the United States.  Petitioner is not entitled to habeas relief on this ground.

***Ground 8: Habitual Offender Sentence and the Equal Protection Clause***

In Ground 8, Petitioner argues that his sentence as a habitual offender under Miss. Code

Ann. § 99-19-81 violates the Equal Protection Clause of the Fourteenth Amendment.[8]

According to Petitioner, he is a "class of one," who was treated differently than other similarly

situated individuals charged as a habitual offender under Miss. Code Ann. § 99-19-81.  Petitioner

asserts that "it is a common and routine practice of various prosecutors and circuit courts in

---

[8] Petitioner was sentenced to twenty year in prison, the maximum sentence for the crime of aggravated domestic violence. *See* Miss. Code. Ann. § 97-3-7(4)(a).

Mississippi to not sentence convicted persons, prosecuted under M.C.A. § 99-19-81, to the maximum term of imprisonment prescribed for the offense of which they were convicted, as the result of plea-bargaining." ([2] at 42).  Indeed, the State offered Petitioner a plea bargain of twenty years in prison, with seven years to serve and thirteen years suspended. ([12-2] at 10-12). Petitioner rejected this plea bargain and elected to move forward with a trial.  Petitioner argues that the State's plea-bargain practice is designed to punish defendants who exercise their constitutional right to a jury trial.  Petitioner provides the names of five inmates who he argues were sentenced as habitual offenders but did not receive the maximum term of imprisonment.

The Equal Protection Clause requires that similarly situated persons be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  Generally, to prove a claim under the Equal Protection Clause, an individual must demonstrate that he was treated differently due to his membership in a protected class and the that unequal treatment stemmed from discriminatory intent. *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 228 (5th Cir. 2008); *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).  The Supreme Court, however, has recognized that an equal protection claim may be brought by a "class of one," where the individual was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  As a "class of one," the individual need not allege membership in a protected class, but he must prove that the difference in treatment was due to illegitimate animus or ill will. *See Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000) (overruled in part on other grounds by *McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002)).

Petitioner has failed to prove that by sentencing him to the maximum term of imprisonment, the trial court was motivated by illegitimate animus or ill will. *See Rodriguez v.*

*Quarterman*, 2009 WL 2170036, at *4 (S.D. Tex. July 20, 2009); *Uresti v. Collier*, 2005 WL 1515386, at *13 (S.D. Tex. June 23, 2005).  The trial court gave Petitioner the sentence mandated by § 99-19-81, which states as follows:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible of parole or probation.

Miss. Code Ann. § 99-19-81.

Moreover, the constitution is not violated simply because the State exercises its discretion in the enforcement of its habitual criminal statute in order to encourage a guilty plea.  The Fifth Circuit has stated as follows:

> The Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiation plea be refused.  It is equally clear that a defendant is free to accept or reject the 'bargain' offered by the state.  Once the bargain—whether it be reduced charges, a recommended sentence, or some other concession—is rejected, however, the defendant cannot complain that the denial of the rejected offer constitutes a punishment or is evidence of judicial vindictiveness.  To accept such an argument is to ignore completely the underlying philosophy and purposes of the plea bargaining system.  If a defendant can successfully demand the same leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial.

*Frank v. Blackburn*, 646 F.2d 873, 883 (5th Cir. 1980) (citations omitted); *see also Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) ("It is clear that due process is not violated when a state prosecutor exercises his discretion and charges a defendant as a habitual offender for refusing a plea bargain.").

34

Petitioner also argues that Miss. Code Ann. § 99-19-81 is unconstitutionally vague. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A statute is unconstitutionally vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or is so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015); *Groome Resources, Ltd. v. Parish of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000). Section 99-19-81, as quoted above, is not vague. The statute clearly allows the State to seek enhanced punishment—the mandatory imposition of the maximum term of imprisonment prescribed for the current felony conviction—for anyone previously convicted of two felonies or federal crimes that resulted in separate prison sentences of one year or more.

Thus, Petitioner has failed to establish that the Mississippi Supreme Court's rejection of these claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Petitioner is not entitled to habeas relief on this ground.

## RECOMMENDATION

For the reasons stated above, the undersigned recommends that the relief sought in Marvin Kirk's Petition [1] be denied and that the Petition be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of

the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 15th day of February, 2018.

s/Michael T. Parker
UNITED STATES MAGISTRATE JUDGE